DDG/2004R00624

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA    :     Hon. William J. Bassler

                            :

             v.                :      Crim. No. 5 Cr 482-3

                            :

ARISMA THEODORE           :      18 U.S.C. § 371


## SUPERSEDING INFORMATION

       The defendant having waived in open court prosecution by Indictment and any objections to venue, the United States Attorney for the District of New Jersey charges:

### COUNT ONE
(Conspiracy to Commit Bank Fraud)

       1. At all times relevant to this Superseding Information:

           a. Lehman Brothers Bank, FSB (hereinafter "Lehman"), with offices at 399 Park Avenue, New York, New York, was a financial institution within the meaning of Title 18, United States Code, Section 20, and a subsidiary of Lehman Brothers Holdings, Inc., and was engaged in the business of making residential mortgage loans to the public;

           b. Aurora Loan Services, Inc. (hereinafter "Aurora"), with offices in Gaithersburg, Maryland, was also a subsidiary of Lehman Brothers Holdings, Inc., and was engaged in underwriting and servicing the mortgage loans funded by Lehman Brothers Bank;

           c. Commerce Bank, North (hereinafter "Commerce"), with a branch office at 1000 Lake Street, Ramsey, New Jersey, was

a financial institution within the meaning of Title 18, United States Code, Section 20, and was engaged in the business of making residential mortgage loans to the public (Lehman Brothers Bank, Aurora Loan Services, and Commerce Bank hereinafter referred to collectively as the "Lenders");

       d.   Consultant J.D., who is named as a coconspirator but not as a defendant herein, owned and/or controlled the operations of Diamond Star Financial.  Diamond Star Financial, with offices in Leonia and later Fort Lee, New Jersey, purported to provide assistance to individuals seeking to invest in real estate.  Consultant J.D's responsibilities included identifying individuals willing to pose as nominee buyers; establishing relationships with real estate brokers, mortgage brokers, and others in the real estate business; identifying real property for sale; negotiating the purchase of real property; preparing and causing the preparation of fraudulent sales contracts, loan applications, and false financial documents; causing the submission of fraudulent mortgage loan applications to the Lenders; and directing the distribution of mortgage loan proceeds fraudulently obtained from the Lenders;

       e.   Consultant B.R., who is named as a coconspirator but not as a defendant herein, owned and/or controlled the operations of M.S. Financial Services, Inc. (hereinafter "M.S. Financial").  M.S. Financial, with offices in Montclair and later Verona, New Jersey, purported to manage and

-2-

oversee real estate investment transactions.  Consultant B.R.'s responsibilities included preparing and causing the preparation of false and fraudulent documents for closings on parcels of real property, managing the real property after the closings, and distributing the mortgage loan proceeds fraudulently obtained from the Lenders;

        f.  Defendant ARISMA THEODORE was an accountant and tax preparer.  Defendant THEODORE's responsibilities included the preparation of letters to be submitted to the Lenders that falsely represented that defendant THEODORE served as an accountant to various nominee buyers and that those nominee buyers were, contrary to fact, wealthy business owners with substantial income;

        g.  Attorney Daniel Ellis, who is named as a coconspirator but not as a defendant herein (hereinafter "Attorney Ellis"), was an attorney admitted to practice in the State of New Jersey.  Attorney Ellis was employed by Consultant B.R. at M.S. Financial Services, and was responsible for preparing false and fraudulent closing documents, conducting real estate closings, and acting as a settlement agent on behalf of a title company at the closings;

        h.  Mortgage Broker Nick Infantino (hereinafter "Mortgage Broker Infantino"), who is named as a coconspirator but not as a defendant herein, was a mortgage broker.  His responsibilities included identifying individuals willing to pose as nominee buyers for the purchase of real property, obtaining

-3-

from them basic identifying and financial information, causing the preparation of fraudulent loan applications in their names, and submitting and causing the submission of these fraudulent applications to the Lenders; and

       i.   Consultant Shaheer Williams (hereinafter "Consultant Williams"), who is named as a coconspirator but not as a defendant herein, owned and/or controlled the operations of New Life Investments.  New Life Investments, with offices in East Orange, New Jersey, purported to purchase, refurbish, and resell homes.  Consultant Williams' responsibilities included identifying individuals willing to pose as nominee buyers of real property, obtaining inflated appraisals on the subject properties, and managing construction on the purchased properties.

      2.   At various times relevant to this Superseding Information, nominee buyers James Campbell, a/k/a "Thomas Goldson" (hereinafter "Campbell"); Brian Togneri (hereinafter "Togneri"); Brandi Mohammed (hereinafter "Mohammed"); Anel Mendez (hereinafter "Mendez"); and Carl DiMasi (hereinafter "DiMasi") (Campbell, Togneri, Mohammed, Mendez, and DiMasi hereinafter referred to collectively as the "Nominee Buyers"), in exchange for a fee, agreed to serve as purchasers in name only of the following parcels of real property (hereinafter referred to collectively as the "Nominee Properties"):

-4-

| PROPERTY | LOCATION | NOMINEE BUYER |
|---|---|---|
| Nominee Property 1 | 15 Schaffer Rd., Alpine, New Jersey | DiMasi |
| Nominee Property 2 | 497 Piermont Rd., Cresskill, New Jersey | Campbell |
| Nominee Property 3 | 66 Chestnut Ridge Rd., Saddle River, New Jersey | Campbell |
| Nominee Property 4 | 21 Christopher Place, Saddle River, New Jersey | Mohammed |
| Nominee Property 5 | 71 Woodcliff Lake Rd., Saddle River, New Jersey | Mendez |
| Nominee Property 6 | 133 Chestnut Ridge Rd., Saddle River, New Jersey | Togneri |

## The Conspiracy

3.   From in or about February 2002, to in or about May 2003, in the District of New Jersey and elsewhere, defendant

ARISMA THEODORE

did knowingly and willfully conspire and agree with others to execute a scheme and artifice to defraud financial institutions, and to obtain money and property under the custody and control of financial institutions, by means of materially false and fraudulent pretenses, representations and promises, contrary to Title 18, United States Code, Section 1344.

## The Object of the Conspiracy

4.   The object of the conspiracy was to fraudulently induce the Lenders to make mortgage loans to the Nominee Buyers that were in excess of the true purchase price of the Nominee Properties, and to distribute the excess mortgage proceeds to the coconspirators in the scheme.

## The Manner and Means of the Conspiracy

5.  Among the means employed by defendant ARISMA
THEODORE and his coconspirators to carry out the conspiracy and
to effect its unlawful objects were the following:

a.  From in or about February 2002 to in or about
October 2002, Consultant J.D., Mortgage Broker Infantino, and
Consultant Williams recruited the Nominee Buyers to act in name
only as the purchasers of the Nominee Properties, in exchange for
a fee.  The Nominee Buyers agreed to act as the purchasers of the
Nominee Properties, knowing that they had no intention of owning,
and would not in fact own, the Nominee Properties.  The Nominee
Buyers further agreed to act as nominee borrowers for mortgage
loans fraudulently obtained from the Lenders and secured by the
Nominee Properties, knowing that they had no intention or
capability of repaying these mortgage loans.

b.  From in or about February 2002 to in or about
October 2002, Consultant J.D., acting in the names of the Nominee
Buyers, entered into contracts for the purchase of the Nominee
Properties.  In order to obtain mortgage loans in excess of the
true purchase prices of the Nominee Properties, Consultant J.D.
and Mortgage Broker Infantino fraudulently caused second,
falsified sales contracts to be prepared without the knowledge or
authorization of the sellers of the Nominee Properties.  These
second, falsified contracts fraudulently reflected the following
inflated purchase prices:

-6-

| PROPERTY | TRUE PURCHASE PRICE | FALSELY INFLATED PURCHASE PRICE |
|---|---|---|
| Nominee Property 1 | $3.8 million | $5.9 million |
| Nominee Property 2 | $1.1 million | $2.05 million |
| Nominee Property 3 | $1.5 million | $3.2 million |
| Nominee Property 4 | $1.8 million | $3.5 million |
| Nominee Property 5 | $2.8 million | $5.5 million |
| Nominee Property 6 | $1.78 million | $4.4 million |

   c. Consultant J.D. and Mortgage Broker Infantino caused these second, falsified contracts to be submitted to the Lenders in support of fraudulent mortgage loan applications, as more fully described below.

   d. From in or about February 2002 to in or about November 2002, Mortgage Broker Infantino, acting in the names of the Nominee Buyers, caused to be submitted materially false and fraudulent mortgage loan applications to Aurora, as agent for Lehman, for the purchases of the Nominee Properties.  In support of these false and fraudulent applications, Mortgage Broker Infantino also caused the following documents to be submitted:

   i. For Nominee Buyers Campbell, Mohammed, and Mendez, false and fraudulent IRS forms W-2 showing the following falsely inflated incomes:

| NOMINEE BUYER | ACTUAL REPORTED INCOME (APPROXIMATE) | INCOME ON FALSE W-2 (APPROXIMATE) |
|---|---|---|
| Campbell | $16,000 | $500,000 |
| Mohammed | $35,000 | $600,000 |
| Mendez | $40,000 | $600,000 |

-7-

ii.  For Nominee Buyers DiMasi and Togneri, letters prepared by defendant ARISMA THEODORE falsely stating that defendant THEODORE was a certified public accountant and falsely attesting that both DiMasi and Togneri were successfully self-employed, whereas in fact, both DiMasi and Togneri were bartenders at a restaurant; and

iii.  For each of the Nominee Buyers, false and fraudulent bank account statements showing average account balances that were falsely inflated above the Nominee Buyers' actual account balances during the same time period as follows:

| NOMINEE BUYER | ACTUAL ACCOUNT BALANCE (APPROXIMATE) | AVERAGE ACCOUNT BALANCE ON FALSE BANK STATEMENT (APPROXIMATE) |
|---|---|---|
| DiMasi | $7,000 | $1.5 million |
| Campbell (Nominee Property 2) | no accounts with positive balance | $1.2 million |
| Campbell (Nominee Property 3) | $10,000 | $1.8 million |
| Mohammed | $3,800 | $1.3 million |
| Mendez | $65,000 | $2.7 million |
| Togneri | $300 | $795,000 |

e.  From in or about April 2002 to in or about December 2002, Mortgage Broker Infantino, acting in the name of the Nominee Buyers, caused materially false and fraudulent second mortgage loan applications to be submitted to Commerce regarding each of the Nominee Properties except Nominee Property 3, containing the same false financial information set forth in Paragraph 5(d), above.

-8-

f.   From in or about February 2002 to in or about October 2002, Consultant Williams caused real estate appraisals to be obtained for each of the Nominee Properties that supported the falsely inflated sales prices contained in the second, falsified sales contracts submitted to the Lenders in support of the false and fraudulent mortgage loan applications.

g.   From in or about April 2002 to in or about November 2002, based in part on the falsely inflated prices in the second, falsified contracts, the fraudulent misrepresentations regarding the income and account balances of the Nominee Buyers, and the real estate appraisals, Lehman agreed to issue mortgage loans to be secured by each of the Nominee Properties.  Lehman funded these loans through wire transfers to the attorney trust account of Attorney Ellis, made on or about the following dates:

| PROPERTY | AMOUNT OF LOAN | DATE FUNDED |
|----------|----------------|-------------|
| Nominee Property 1 | $3.835 million | 12/3/02 |
| Nominee Property 2 | $1.435 million | 4/29/02 |
| Nominee Property 3 | $2.24 million | 10/18/02 |
| Nominee Property 4 | $2.45 million | 8/27/02 |
| Nominee Property 5 | $3.575 million | 10/31/02 |
| Nominee Property 6 | $2.86 million | 8/20/02 |

h.   From in or about April 2002 to in or about December 2002, Consultant B.R. and Attorney Ellis prepared and submitted to Lehman various closing and mortgage loan documents, knowing that the mortgage loans had been obtained based on false

-9-

and fraudulent information.  From in or about April 2002 to in or about December 2002, these fraudulent closing and mortgage loan documents were executed by each of the Nominee Buyers.

        i.  From in or about April 2002 to in or about December 2002, based in part on the falsely inflated price in the second, falsified contracts and the fraudulent misrepresentations regarding the income and account balances of the Nominee Buyers, Commerce agreed to issue second mortgage loans in the following amounts, to be secured by each of the Nominee Properties except Nominee Property 3:

| PROPERTY | AMOUNT OF SECOND LOAN | DATE FUNDED |
|---|---|---|
| Nominee Property 1 | $885,000 | 12/9/02 |
| Nominee Property 2 | $205,000 | 4/30/02 |
| Nominee Property 4 | $350,000 | 9/17/02 |
| Nominee Property 5 | $825,000 | 11/7/02 |
| Nominee Property 6 | $660,000 | 9/12/02 |

        j.  From in or about April 2002 to in or about December 2002, Consultant B.R. and Attorney Ellis prepared and submitted to Commerce various closing and mortgage loan documents, knowing that the mortgage loans had been obtained based on false and fraudulent information.  From in or about April 2002 to in or about December 2002, these fraudulent closing and mortgage loan documents were executed by various coconspirators in the names of the Nominee Buyers.

        k.  Beginning in or about May 2002, and in order to conceal the fraudulent activity of the conspiracy, Consultants

-10-

J.D. and B.R. made, and directed to be made, regular periodic mortgage payments to the Lenders.

l. Beginning in or about May 2002, Consultants J.D., B.R., and others distributed payments to each of the coconspirators consisting of monies from the proceeds of the fraudulently-obtained mortgage loans.

m. In addition to the fraudulent mortgage loans on the Nominee Properties, from in or about April 2002 to in or about December 2002, defendant THEODORE, Consultants J.D., B.R., and their coconspirators, using second, falsified contracts, false and fraudulent financial documents, and fraudulent loan applications in a manner similar to that described above, also arranged for and obtained from Lehman, Commerce, and Rose Mortgage Corporation ("Rose Mortgage") the following additional mortgage loans:

| PROPERTY | LENDER | AMOUNT OF LOAN |
|---|---|---|
| 7 Cassandra Dr., Alpine, New Jersey | Lehman | $2.975 million |
| 7 Cassandra Dr., Alpine, New Jersey | Commerce | $600,000 |
| 21 Schaffer Rd., Alpine, New Jersey | Lehman | $2.925 million |
| 21 Schaffer Rd., Alpine, New Jersey | Commerce | $885,000 |
| 21 Schaffer Rd., Alpine, New Jersey | Rose Mortgage | $2.925 million |

<u>Overt Acts</u>

6.   In furtherance of the conspiracy, and in order to effect the object thereof, defendant ARISMA THEODORE, and one or more of his coconspirators committed, and caused to be committed, the following acts in the District of New Jersey and elsewhere:

a-f.   On or about the dates set forth below, Consultant J.D. prepared and caused to be prepared, and subsequently submitted and caused to be submitted to Lehman, the following second, falsified sales contracts containing fraudulently inflated sales prices:

| Overt Act | Date of Contract | Property | Fraudulently Inflated Sales Price Listed in Contract |
|---|---|---|---|
| 6a | 2/2/02 | Nominee Property 2 | $2.05 million |
| 6b | 7/9/02 | Nominee Property 6 | $4.4 million |
| 6c | 7/9/02 | Nominee Property 4 | $3.5 million |
| 6d | undated | Nominee Property 3 | $3.2 million |
| 6e | 8/12/02 | Nominee Property 5 | $5.5 million |
| 6f | 9/20/02 | Nominee Property 1 | $5.9 million |

g-l.   On or about the dates set forth below, Consultant B.R. prepared and caused to be prepared, and subsequently submitted and caused to be submitted to Lehman, the following falsified closing documents containing fraudulently inflated sales prices:

-12-

| Overt Act | Date of Closing | Property | Fraudulently Inflated Sales Price Listed in Closing Documents |
|---|---|---|---|
| 6g | 4/29/02 | Nominee Property 2 | $2.05 million |
| 6h | 10/1/02 | Nominee Property 6 | $4.4 million |
| 6i | 8/27/02 | Nominee Property 4 | $3.5 million |
| 6j | 10/18/02 | Nominee Property 3 | $3.2 million |
| 6k | 10/31/02 | Nominee Property 5 | $5.5 million |
| 6l | 12/3/02 | Nominee Property 1 | $5.9 million |

m-n.   On or about the dates set forth below,
defendant ARISMA THEODORE prepared and caused to be prepared, and
subsequently submitted and caused to be submitted to Lehman, the
following letters falsely describing himself as a certified
public accountant and falsely representing that certain Nominee
Buyers were individuals of substantial personal wealth:

| Overt Act | Date of Letter | Nominee Buyer | False Representation |
|---|---|---|---|
| 6m | 8/19/02 | Togneri | Togneri has been client "for the past several years," "has been self-employed for the duration of that period" and "owns and operates a successful restaurant business" |
| 6n | 11/19/02 | DiMasi | DiMasi "has been self-employed for the past three years" |

All in violation of Title 18, United States Code,
Section 371.

-13-

COUNT TWO
(Conspiracy to Defraud the United States)

1.  Paragraph 1f of Count 1 is realleged and incorporated as if fully set forth herein.

2.  At all times relevant to this Superseding Information, defendant ARISMA THEODORE was the sole owner and operator of Financial Independent Services (FIS), located in Brooklyn, New York, where he prepared income tax returns for a fee.

3.  From in or about December 2002, to in or about March 2003, in the Eastern District of New York, and elsewhere, defendant

ARISMA THEODORE

did knowingly and willfully conspire and agree with others to defraud the United States.

### The Object of the Conspiracy

4.  The object of the conspiracy was to prepare false and fictitious income tax returns and to present them to the Internal Revenue Service, an agency of the United States, in order to obtain false refunds.

### The Manner and Means of the Conspiracy

5.  It was a part of the conspiracy that coconspirator L.C., also known as Y.T., solicited personal identification information from individuals who frequented homeless shelters, public benches and low-income housing sites in the New York City area, under the false promise that these individuals would lawfully receive money from the Internal Revenue Service.

-14-

6.   It was a further part of the conspiracy that defendant ARISMA THEODORE used the identity information provided by coconspirator L.C. to file approximately 49 false and fictitious federal income tax returns, claiming false refunds in the amount of about $112,000.

### Overt Acts

7.   In furtherance of the conspiracy, and in order to effect the object thereof, defendant ARISMA THEODORE and his coconspirators committed, and caused to be committed, the following acts in the Eastern District of New York and elsewhere:

a.   In or about December 2002, defendant ARISMA THEODORE prepared and caused to be filed with the Internal Revenue Service a false and fictitious federal income tax form 1040 in the name of L.P. in order to obtain a false refund in the amount of $2,462.

b.   In or about December 2002, defendant ARISMA THEODORE prepared and caused to be filed with the Internal Revenue Service a false and fictitious federal income tax form 1040 in the name of M.H. in order to obtain a false refund in the amount of $946.

All in violation of Title 18, United States Code, Section 371.


CHRISTOPHER J. CHRISTIE
United States Attorney

-15-

CASE NUMBER: ____

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

**Arisma Theodore**

# INFORMATION FOR

18 U.S.C. § 371

**CHRISTOPHER J. CHRISTIE**
*U.S. ATTORNEY NEWARK, NEW JERSEY*

DONNA D. GALLUCIO
*ASSISTANT U.S. ATTORNEY*
*NEWARK, NEW JERSEY*
*(973) 645-2786*